UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PRUDHOMME ET AL                     CIVIL ACTION NO. 6:18-CV-00156

VERSUS                              MAGISTRATE JUDGE HANNA

WAL-MART STORES, INC.               BY CONSENT OF THE PARTIES


<u>**MEMORANDUM RULING**</u>

Currently pending is the motion for summary judgment (Rec. Doc. 17), which

was filed by the sole defendant herein, Wal-Mart Stores, Inc. ("Wal-Mart"). The

plaintiffs, Craig Prudhomme and Monique Prudhomme, oppose the motion. (Rec.

Doc. 22). Wal-Mart also filed a reply. (Rec. Doc. 26) For the reasons fully explained

below, the motion is GRANTED.

<u>B<small>ACKGROUND</small></u>

This case arises out of an incident which occurred while Craig Prudhomme

("Mr. Prudhomme") and his adult son, Jobb, were shopping at Wal-Mart Store No.

312, located in Ville Platte, Louisiana, on November 23, 2016.[1] At approximately

11:40 a.m., Mr. Prudhomme was walking down the main aisle, known as "action

---

[1] Although the plaintiffs' statement of material facts indicates that the incident occurred
on November 21, 2016 (*see* Rec. Doc. 23-1, p. 1, ¶ 1), this appears to be a typo, as it is
undisputed that the incident occurred on November 23, 2016 (*see, e.g.*, Rec. Doc. 1-2, p. 3, ¶ 3;
Rec. Doc. 23, p. 1; Rec. Doc. 17-4, p. 5; and Rec. Doc. 17-7).

1

alley," when he slipped in a clear liquid substance, which he believed to be water.[2]

During his deposition, Mr. Prudhomme testified that he believes that both of his feet slipped in the liquid, at which point he struck his left elbow and hip on a stackbase of displayed merchandise before hitting his right hip on the floor.[3] Mr. Prudhomme did not see any liquid on the floor until after he fell, at which point he noticed that "the aisle was soaking wet when [he] landed in the puddle of water."[4] It is undisputed that there was some amount of water on the floor immediately after Mr. Prudhomme's accident.[5]

Wal-Mart produced surveillance video, depicting a portion of the relevant section of action alley, between the hours of 10:39 a.m. and 12:39 p.m., on November 23, 2016.[6] While the video does not depict any water nor does it capture

---

[2] Rec. Doc. 17-2, p. 1, ¶ 1; Rec. Doc. 23-1, p. 1, ¶¶ 1, 2, and 5.

[3] Rec. Doc. 17-4, p. 56. The plaintiffs' pleading and opposition, as well as some of the deposition testimony (*see, e.g.,* Rec. Doc. 17-9, pp. 11-12), use "pallet" interchangeably with "stackbase." However, the record reflects that a "stackbase" is made of hard plastic material and is used to display merchandise in the store, while a "pallet" is made of wood and typically used to move or hold freight with which overnight associates stock the shelves. Pallets are not typically placed in the aisles during the day unless an associate is stocking at that time. *See* Rec. Docs. 17-8, pp. 9, 12, 32-34; and 17-3, p. 4 n.1; *see also* Rec. Doc. 17-9, pp. 31-32; and Rec. Doc. 17-11, p. 15. Here, the relevant term is "stackbase."

[4] Rec. Doc. 17-4, p. 39.

[5] *See* Rec. Doc. 17-8, pp. 10-11 (Wal-Mart's assistant manager, Gerald Lejeune, testified that, after the accident, he saw a "small puddle around where Mr. Prudhomme fell."). The Court acknowledges that both Wal-Mart and the plaintiffs have attached Mr. Prudhomme's, Jobb Prudhomme's, and Gerald Lejeune's depositions to the motion (*see* Rec. Docs. 17-4, 17-5, and 17-8) and opposition (*see* Rec. Docs. 23-2, 23-9, and 23-10), respectively. For purposes of this ruling, all references to those depositions will be made to the attachments to Wal-Mart's motion.

[6] Rec. Doc. 17-6 (notice of manual attachment of video footage); *see also* Rec. Doc. 17-8, pp. 14-15 (Mr. Lejeune testified that it is Wal-Mart's company policy to preserve the portion of

the beginning of Mr. Prudhomme's slip, it nonetheless provides relevant facts as discussed herein. The Court has reviewed the video carefully. As noted, Mr. Prudhomme's fall occurred at approximately 11:40:38 a.m., and for purposes of this discussion, took place in the aisle located to the right of the stackbase, causing him to strike his left elbow on the right side of the stackbase display, as he fell. Over the course of one hour, directly preceding Mr. Prudhomme's fall, the Court observed more than one hundred (100) people traverse the same aisle, to the right of the stackbase, where Mr. Prudhomme would later fall. By the Court's count, this foot-traffic included at least ten (10) Wal-Mart employees.

The video shows a female Wal-Mart employee, confirmed through her deposition to be Brenda Kerry, entering action alley, from an intersecting aisle to the left of the stackbase, at approximately 11:33:23 a.m., or roughly seven minutes prior to Mr. Prudhomme's accident.[7] Ms. Kerry testified that, on that date, she was "zoning," meaning that she was responsible for checking different zones of the store, to ensure that no merchandise was stacked too high or protruding from any corner of a stackbase.[8] Consistent with her deposition testimony, the video shows Ms. Kerry

---

relevant video surveillance capturing one hour preceding and one hour following any store accidents).

[7] Rec. Doc. 17-9, pp. 44-45 (Ms. Kerry identifying herself on video during her deposition), and p. 13 ("[W]hen I was zoning – I just had got through zoning that area . . . when I looked back and I seen that it was a problem.").

[8] Rec. Doc. 17-9, pp. 12-13, 17.

"zoning" the aisles and stackbases, including the one upon which Mr. Prudhomme later struck his elbow.[9] At 11:33:27, Ms. Kerry is observed approaching the stackbase, which was displaying cans of green beans at the time, and rearranging the remaining cans so that the displayed cans aligned with the outermost edge of the stackbase.[10] This task takes her approximately 20 seconds, or until 11:33:46, and involves walking from left to right, along one full edge of the stackbase, all the way to the corner meeting the right side of the stackbase, upon which Mr. Prudhomme would later strike his elbow. Between the time that Ms. Kerry finished zoning the area and Mr. Prudhomme's fall, which was less than seven minutes, the Court observed at least twenty-five (25) patrons, including Mr. Prudhomme himself, traverse the aisle to the right of the stackbase, where the accident later occurred.

Both the Court's review of the video surveillance, as well as Mr. Prudhomme's deposition testimony, confirm that Mr. Prudhomme and his son were first captured on video, walking past the left side of the stackbase, while pushing a shopping cart, at 11:35:10 a.m. and then again at 11:36:46 a.m., just a few minutes prior to his accident.[11] Then, at approximately 11:39:40 a.m., Mr. Prudhomme traverses the exact area where he would later fall, traveling in the opposite

---

[9] Rec. Doc. 17-9, p. 17 ("I had zoned that pallet.").
[10] Rec. Doc. 17-9, p. 32.
[11] Rec. Doc. 17-4, pp. 42-43, 46, and 49-50.

direction.[12] Less than one minute later, at 11:40:38 a.m., the video captures Mr. Prudhomme passing through the area again, this time falling. During his deposition, Mr. Prudhomme testified that he did not remember seeing water when he walked down the same aisle, traveling in the opposite direction, one minute before his fall.[13] Although he "was looking straight ahead" while walking, he speculated that he was "almost sure [he] could have" seen the puddle of water if he'd looked down at the floor.[14] Both Mr. Prudhomme and his son, Jobb, testified that they did not know how long the water had been on the floor prior to Mr. Prudhomme's accident nor did either one know the cause or source of the water.[15]

As recognized, only a portion of Mr. Prudhomme's slip and fall is captured, such that the Court was able to observe Mr. Prudhomme coming into view at the bottom of the video feed, mid-fall, as he makes contact with the stackbase and proceeds down to the floor. Ms. Kerry testified that she observed Mr. Prudhomme's accident in real time, although she could not say what caused him to slip.[16] She testified that, from her vantage point, she saw Mr. Prudhomme "slip," at which point "[h]is hand came in contact with [the stackbase] . . . to balance hi[m]self," and he

---

[12] Again, the Court observed Mr. Prudhomme on the video; however, this fact is confirmed by his own deposition testimony. *See* Rec. Doc. 17-4, pp. 46 and 49-50.

[13] Rec. Doc. 17-4, pp. 49-50.

[14] *Id*. at p. 50.

[15] Rec. Doc. 17-4, pp. 41, 51-52 and 54-55; and Rec. Doc. 17-5, pp. 9-15 and 18-19.

[16] Rec. Doc. 17-9, p. 34 and p. 46.

came within "maybe four inches from the floor."[17] At that point, Ms. Kerry "heard his son tell him to sit down," saw a "scratch . . . on his arm," and remained there "about ten minutes" until the assistant manager took over the scene.[18]

At the time of Mr. Prudhomme's accident, the manager and assistant manager were Josh Anderson and Gerald Lejeune, respectively.[19] Although both men were apparently present on scene in the aftermath of Mr. Prudhomme's fall, only Mr. Lejeune testified to having any recollection of Mr. Prudhomme's accident.[20] After the accident, Mr. Lejeune testified that he saw a "small puddle around where Mr. Prudhomme fell."[21] Mr. Lejeune did not know how long the water had been on the floor but testified that the water did not reach the stackbase.[22]

In the instant lawsuit, the plaintiffs claim that Wal-Mart is liable for Mr. Prudhomme's fall and the resulting damages, including injury to his back for which he has undergone surgery.[23] Wal-Mart denies liability and has moved for summary judgment. In the instant motion, Wal-Mart argues that the evidence and testimony establishes that Wal-Mart neither caused the liquid to be on the floor nor had actual

---

[17] Rec. Doc. 17-9, pp. 25, 26, 33, 34, and 36.
[18] Rec. Doc. 17-9, pp. 25, 26, 27, and 35-36; *see also* Rec. Doc. 17-5, p. 16.
[19] Rec. Doc. 17-8, pp. 5, 8-10; Rec. Doc. 17-11, pp. 7-9.
[20] Rec. Doc. 17-11, pp. 7, 11-13.
[21] Rec. Doc. 17-8, pp. 10-11.
[22] Rec. Doc. 17-8, pp. 11-12.
[23] *See* Rec. Doc. 17-4, pp. 59-69.

or constructive notice of any spill prior to Mr. Prudhomme's fall. Because the evidence shows that the water could not have been on the floor longer than a few minutes, Wal-Mart argues that the plaintiffs cannot meet their burden of proof under Louisiana's Merchant Liability Act, La. R.S. 9:2800.6. Finally, Wal-Mart contends that there is no evidence that the stackbase presented an unreasonably dangerous condition, such that it could not have caused or contributed to Mr. Prudhomme's accident in any way.

<u>**LAW & ANALYSIS**</u>

**A.** **THE SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[24] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[25]

---

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[25] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[26] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[27] All facts and inferences are construed in the light most favorable to the nonmoving party.[28]

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[29] Therefore, the Court "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'"[30]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[26] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[27] *Washburn*, 504 F.3d at 508.

[28] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[29] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

[30] *Id.* (quoting *Scott*, 550 U.S. at 381).

claim.[31] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[32]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[33] The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[34] "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is proper."[35]

Where there is no contest as to the operative facts, such that interpretations of statutory provisions are dispositive and raise only questions of law, the case is particularly appropriate for summary judgment.[36]

---

[31] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 325).

[32] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[33] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[34] *Id.*

[35] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[36] *Dobbs v. Costle*, 559 F.2d 946, 947 (5th Cir. 1977); *see also Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) ("questions of statutory interpretation are questions of law.").

**B.**  **THE APPLICABLE LAW**

In a diversity case such as this one, federal courts apply state substantive law, which here, is Louisiana law.[37] Therefore, Wal-Mart's liability in this case is governed by the Louisiana Merchant Liability Act, La. R.S. § 9:2800.6, which reads as follows in its entirety:

A.    A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B.    In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1)    The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2)    The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)    The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.    Definitions:

---

[37] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

(1)     "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2)     "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D.     Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

The statute requires a plaintiff to prove that: (1) there was a condition that presented an unreasonable risk of harm and that risk of harm was reasonably foreseeable; (2) the merchant either created the condition or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care.[38] If the plaintiff fails to prove any one of those three elements, the merchant is not liable. The Louisiana Supreme Court has found this statute to be clear and unambiguous.[39]

---

[38] *Duncan v. Wal-Mart Louisiana, L.L.C.*, 863 F.3d 406 (5th Cir. 2017) (citing La. R.S. § 9:2800.6 and *Thompson v. Winn-Dixie Montgomery, Inc.*, No. 2015-0477, pp. 6-7 (La. 10/14/15); 181 So.3d 656, 662).

[39] *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 09/09/97); 699 So.2d 1081, 1084.

**C.**  **THE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT WAL-MART CREATED OR HAD ACTUAL OR CONSTRUCTIVE NOTICE OF THE WATER**

In their original state court petition, the plaintiffs allege, *inter alia*, that Mr. Prudhomme slipped and "fell upon a wooden pallet which was encroaching in the walking aisle, without warnings, nor caution[,]" and that said "pallet partially concealed the size of the water puddle which was caused by the roof/ceiling leaking."[40] The plaintiffs contend that Wal-Mart was negligent in allowing the unreasonably safe condition, *i.e.* the leaked or spilled liquid, to remain on the floor for an unreasonable amount of time and without warning customers; failing to clean up the spill or repair any roof leak in a reasonable time; failing to warn patrons of the dangerous condition; failing to properly inspect the aisles; and failing to move pallets to a safer location.[41] Although the plaintiffs' petition lends itself to two interpretations of the alleged "condition" at issue, being the liquid or the "pallet," the Court will focus first on the clear liquid, which is presumed to be water.

It is undisputed that it rained prior to, and potentially during, the Prudhomme's visit to Wal-Mart, on November 23, 2016.[42] Although the plaintiffs' petition alleged that the water was caused by the roof or ceiling leaking, there is no evidence to

---

[40] Rec. Doc. 1-2, p. 3, ¶ 3.
[41] Rec. Doc. 1-2, p. 4, ¶ 5.
[42] *See* Rec. Docs. 17-4, p. 37 (Mr. Prudhomme testified that "[i]t had rained hard; but it wasn't raining real hard when we got there, just a little drizzle.") and p. 55 ("Right when we got there, it quit raining."); *see also* Rec. Doc. 17-9, pp. 18-19, 48.

suggest that there was a roof leak anywhere near the area where Mr. Prudhomme fell.[43] The plaintiffs do not dispute the lack of evidence supporting any relevant roof leak in their opposition nor have they come forward with any positive evidence thereof.[44] Further, as pointed out by Wal-Mart and undisputed by the plaintiffs, there is no evidence that Wal-Mart caused the water to be on the floor, *i.e.* created the condition, or had actual notice that the water was on the floor prior to Mr. Prudhomme's fall.[45] Therefore, in order to survive summary judgment and establish the second element above, the plaintiffs must establish that Wal-Mart had constructive notice of the water.

As recognized, to prove constructive notice, the plaintiffs must establish "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care."[46] By referencing "such a period of time," "[t]he statute does not allow for the inference of constructive notice absent some showing of this temporal element."[47] It is the plaintiffs' burden to "make a

---

[43] Rec. Doc. 17-2, p. 1, ¶ 1 (citing Rec. Docs. 17-4 (Mr. Prudhomme), pp. 54-55; 17-8 (Mr. LeJeune), pp. 32-33; and 17-9 (Ms. Kerry), pp. 19-20). Ms. Kerry testified that there was a roof leak, but it was "[p]robably 30 feet" away from the area where Mr. Prudhomme fell. Rec. Doc. 17-9, p. 19.

[44] Pursuant to Local Rule 56.2, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

[45] Rec. Doc. 17-3, pp. 7-8 (citing Rec. Docs. 17-4, pp. 41, 52; and 17-5, p. 12).

[46] La. R.S. § 9:2800.6(C)(1).

[47] *White*, 699 So.2d at 1084.

positive showing of the existence of the condition prior to the fall[;]" Wal-Mart "does not have to make a positive showing of the absence of the existence of the condition prior to the fall."[48] "Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden."[49]

It is therefore well-established that "[t]he statute 'places a heavy burden of proof on plaintiffs' in slip and fall cases."[50] "'Mere speculation or suggestion' is not sufficient to meet this burden, and courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are 'no more likely than any other potential scenario.'"[51]

The Louisiana Supreme Court has acknowledged that "there is no bright line time period" and explained the requirement of establishing constructive notice, as follows:

> Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove

---

[48] *Id.*

[49] *Id.*

[50] *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quoting *Jones v. Brookshire Grocery Co.*, No. 37,117-CA (La. App. 2 Cir. 5/14/03); 847 So.2d 43, 48).

[51] *Id.* (quoting *Allen v. Wal-Mart Stores, Inc.*, No. 37,352-CA (La. App. 2 Cir. 6/25/03); 850 So.2d 895, 898-99).

the condition existed for some time period prior to the fall. This is not an impossible burden.[52]

These standards were established by the Louisiana Supreme Court in *White v. Wal-Mart*, in which the plaintiff "slipped in a clear liquid and fell" after she had "walked down the entire aisle" twice and "failed to see the liquid" herself.[53] After the trial court found for the plaintiff and awarded damages without providing any reasons, the appellate court affirmed and speculated that constructive notice could have been based on an employee who "could have noticed the spill" from fifteen feet away.[54] However, the Louisiana Supreme Court reversed, stating that "[t]o find constructive notice . . . without any positive showing of how long the spill was in existence or if it could be seen from [the employee's] zone [wa]s error."[55] *White* found that the plaintiff had "presented absolutely no evidence that the liquid was on the floor for any length of time[,]" and the "complete lack of evidence [fell] far short of carrying the burden of proving that the liquid had been on the floor for such a period of time that the defendant should have discovered its existence."[56]

Here, the plaintiffs have not come forward with any evidence that the water was on the floor for any length of time. Neither Mr. Prudhomme nor his son, Jobb,

---

[52] *White*, 699 So.2d at 1084-85.
[53] *Id*. at 1082 and 1085.
[54] *Id.* at 1085-1086.
[55] *Id*. at 1086.
[56] *Id*.

have any knowledge regarding the cause or source of the water or how long it was on the floor prior to Mr. Prudhomme's fall.[57] Jobb Prudhomme testified that the water "was clear," and "there was nothing around there" to indicate where the water may have come from.[58] Likewise, Mr. Prudhomme's deposition testimony confirms that the liquid was clean and clear, and there were no "buggy tracks" which might have indicated that a shopping cart had driven through the water.[59]

On the other hand, Ms. Kerry, who had "zoned" the area just seven minutes prior to Mr. Prudhomme's fall, testified that she was certain that there was "no water" on the floor at that time, "because [she] would have cleaned it."[60] She further testified that, as part of her routine zoning responsibilities, she would wipe up any spills, call maintenance if necessary, and remain in the area of the spill to prevent customers from entering the area until the spill was cleaned up.[61] Furthermore, like the plaintiff in *White*, it is undisputed that Mr. Prudhomme himself traversed the relevant path, in the opposite direction, just one minute prior to the fall and did not notice any water at that time.[62] And, finally, in reviewing the video surveillance, the Court not only observed Mr. Prudhomme's first pass down the relevant aisle but also

---

[57] Rec. Doc. 17-4, pp. 41, 51-52 and 54-55; and Rec. Doc. 17-5, pp. 9-15 and 18-19.
[58] Rec. Doc. 17-5, p. 9.
[59] Rec. Doc. 17-4, pp. 41-42.
[60] Rec. Doc. 17-9, p. 20 and p. 45.
[61] Rec. Doc. 17-9, pp. 21-22.
[62] *See* Rec. Doc. 17-4, pp. 46 and 49-50.

16

the traversals, without incident, of at least twenty-five (25) other patrons in the seven minutes between Ms. Kerry's zoning and Mr. Prudhomme's fall. There is no basis upon which the Court could find that Wal-Mart had constructive notice of any water on that section of action alley's floor prior to Mr. Prudhomme's fall. A review of relevant jurisprudence supports this conclusion.

Wal-Mart cites to several cases in which similar, and in some instances even longer, durations of time were found to be insufficient to impose constructive notice on a merchant under La. R.S. § 9:2800.6. Notably, each of these cases also involved a hazard which was something other than a clean, clear liquid. In *Williams v. Rouse's Enterprises, Inc.,* Louisiana's First Circuit found in favor of the merchant-defendant after it established that an employee had visually inspected the floors only six minutes prior to the plaintiff slipping on "a round, hard silvery object the size of a very small green sweet pea that looked like a BB (shot pellet) or ball bearing."[63] In *Delahoussaye v. Delchamps, Inc.*, Louisiana's Third Circuit Court of Appeal found that the plaintiff had failed to establish constructive notice of a banana peel on which the plaintiff had slipped, when expert testimony established that the banana peel could not have been on the floor longer than five minutes prior to the plaintiff's

---

[63] *Williams v. Rouse's Enterprises, Inc.*, 96-1607 (La. App. 1 Cir. 5/9/97); 693 So. 2d 1298, 1299 and 1300.

fall.[64] And, in another First Circuit case involving a plaintiff who slipped on rice in a Rouse's aisle, the court found no constructive notice where the defendant-merchant's evidence indicated "there was about a 10-minute timeframe within which the rice could have been on the floor[,]" but the plaintiff "produced no positive evidence to show that the rice was on the floor for *any* period of time . . . ."[65] The latter, in particular, emphasizes the slip-and-fall claimant's heavy burden and makes clear that it does not shift to the merchant defendant.

A recent Fifth Circuit case reiterates this point. In *Duncan v. Wal-Mart Louisiana, L.L.C.,* a Wal-Mart employee fell in front of a Reddy Ice freezer at work, while pregnant, and had a stillbirth the following day.[66] Because Louisiana's Worker's Compensation Act does not cover the loss of an unborn child, the employee was not barred from proceeding against Wal-Mart under Louisiana's Merchant Liability Act.[67] On appeal, "the parties agree[d] the only issue [wa]s whether Wal-Mart 'created or had actual or constructive notice' that there was water

---

[64] *Delahoussaye v. Delchamps, Inc.*, 96-1677 (La. App. 3 Cir. 4/30/97); 693 So. 2d 867, 870.

[65] *Nash v. Rouse's Enterprises, LLC*, 2015-1101 (La. App. 1 Cir. 2/26/16); 191 So. 3d 599, 602 (Plaintiff "produced no positive evidence to show that the rice was on the floor *any* period of time, much less that it was there such time as was sufficient to place Rouse's on notice of its existence or that Rouse's failure to detect the rice within that short timeframe was a lack of 'reasonable care.'") (emphasis in original).

[66] *Duncan, supra,* 863 F.3d 406.

[67] 863 F.3d at 408 n.1.

under the mat in front of the Reddy Ice freezer (the unreasonably risky condition) before Duncan slipped and fell."[68] Relying on *White*, the Fifth Circuit stressed that "the plaintiff 'must come forward with *positive evidence* showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence.'"[69] The only evidence submitted in support of the plaintiff's claim was the plaintiff-employee's deposition, in which she repeatedly explained that she did not know how the water got there, no one at Wal-Mart indicated that they knew the water was there prior to her fall, and she did not know whether water had ever accumulated there before.[70] "Without any 'positive evidence' that Wal–Mart 'created or had actual or constructive notice of the condition which caused the damage,' as § 9:2800.6(B)(2) requires," the Fifth Circuit held that the plaintiffs could not maintain their merchant-liability claim.[71]

As discussed above, the same is true in the instant case. Neither Mr. Prudhomme nor his son know how or when the water (or other clean, clear liquid) got on the floor. And, there is no evidence that any Wal-Mart employee knew or should have known that the water was on the floor prior to the fall. The plaintiffs have therefore failed to "come forward with positive evidence showing that the

---

[68] 863 F.3d at 409.
[69] 863 F.3d at 409 (quoting *White*, 699 So.2d at 1082) (emphasis in *Duncan*).
[70] 863 F.3d at 410.
[71] 863 F.3d at 410.

damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence."[72]

## D. THE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE STACKBASE PRESENTED AN UNREASONABLE RISK OF HARM

Again, in their original state court petition, the plaintiffs further alleged that Wal-Mart's placement of "pallets for display of products in the middle of an aisle where patrons are required to walk [] posed an unreasonable risk of injury both to trip and to cause severe damages if a customer fell and struck any part of his body on said pallet."[73] However, it is clear that the plaintiffs are not alleging, here, that Mr. Prudhomme's fall was caused by tripping on any pallet or stackbase. Instead, the plaintiffs allege that Mr. Prudhomme "slipped and fell in the water and injured himself because the pallet was sticking out apparently without merchandise covering the entire pallet."[74] Although the plaintiffs attach to their opposition various excerpts of Wal-Mart's safety manual, including policies relevant to pallets and stackbases, there is no evidence to support any claim that the stackbase presented an unreasonable risk of harm.

"In determining whether a condition is unreasonably dangerous, courts use a four-part risk-utility test, which requires consideration of the following factors: (1)

---

[72] *White*, 699 So.2d at 1082; *Duncan*, 863 F.3d at 409.
[73] Rec. Doc. 1-2, p. 4, ¶ 7.
[74] Rec. Doc. 23-1, p. 1, ¶ 7.

the utility of the complained of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."[75] Louisiana courts have noted "that a pallet does not inherently pose an unreasonable risk of harm."[76] Here, the video confirms Ms. Kerry's testimony that, just seven minutes prior to Mr. Prudhomme's accident, she had "zoned" the stackbase, to ensure that the cans of green beans aligned with the edge of the stackbase.[77] "Certainly, the display in the instant case is a condition any customer would reasonably expect to encounter in [this type of] store, and it presents no unreasonable risk of harm to a customer exercising reasonable care."[78]

Importantly, "[s]tore owners are not required to insure against all incidents that occur on the premises."[79] "They are not absolutely liable whenever an incident happens."[80] As discussed above, the involvement of the stackbase in Mr. Prudhomme's injury was a function of him slipping in the clear liquid, presumed to

---

[75] *Upton v. Rouse's Enter., LLC*, 15-484 (La. App. 5 Cir. 2/24/16); 186 So. 3d 1195, 1199 (citing *Bufkin v. Felipe's La., LLC*, 14–288 (La. 10/15/14); 171 So.3d 851, 856).
[76] *Upton*, 186 So.3d at 1202 (citing *Reed v. Home Depot USA, Inc.*, 37,000 (La. App. 2 Cir. 4/9/03); 843 So.2d 588, 592).
[77] Rec. Doc. 17-9, p. 17 ("I had zoned that pallet."), and pp. 44-45.
[78] *Upton*, 186 So.3d at 1202.
[79] *Jackson v. Delchamps, Inc.*, 96-2417 (La. App. 1 Cir. 3/27/97); 691 So.2d. 332, 335.
[80] *Id*. (citing *Retif v. Doe*, 93-1104 (La. App. 4 Cir. 2/11/94); 632 So.2d 405).

be water, which caused him to strike his elbow on the stackbase. The stackbase itself did not cause the accident nor did it inherently pose an unreasonable risk of harm. And, as discussed above, the plaintiffs likewise cannot establish that Wal-Mart "created or had actual or constructive notice" that there was water on the floor prior to Mr. Prudhomme's fall. Because "[f]ailure to prove any of the requirements enumerated in La. R.S. [§] 9:2800.6 will prove fatal to the plaintiff's case[,]" Wal-Mart is entitled to summary judgment.[81]

## CONCLUSION

For the reasons fully explained above, the motion for summary judgment (Rec. Doc. 17), which was filed by the defendant, Wal-Mart Stores, Inc., is hereby GRANTED. The plaintiffs' claims are hereby DISMISSED WITH PREJUDICE.

Signed at Lafayette, Louisiana on this 2nd day of January, 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[81] *Williamson v. Wal–Mart Stores, Inc.*, 48,576 (La. App. 2 Cir. 1/8/14); 130 So.3d 478, 482.